IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD E. ROBERSON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No.  20-cv-1146-RJD |
| | ) |
| FRANK E. LAWRENCE and JACQUELINE | ) |
| LASHROOK, | ) |
| | ) |
|    Defendants. | ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter is before the Court on the Motion for Summary Judgment on Exhaustion filed by Defendants Frank Lawrence and Jacqueline Lashbrook (Doc. 28). For the reasons set forth below, the Motion is **GRANTED**.

**Background**

Plaintiff Edward Roberson, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). In his First Amended Complaint, Plaintiff alleges he was unable to adequately respond to a motion for summary judgment filed in two civil cases while he was at Menard because he was not provided legal assistance, including access to the law library, help from law clerks, or reading materials, despite requesting the same. The motions were field in September 2018, and his responses were due in December 2018. Plaintiff was forced to respond to the motions without any assistance, and the cases were dismissed. Plaintiff proceeds in this action on the following claim:

    Count One:    First Amendment access to the court claims against Frank Lawrence

and Jacqueline Lashbrook for denying Plaintiff access to the law library, legal materials, and law clerks.

Defendants filed a motion for summary judgment arguing Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit (Doc. 28). Defendants contend Plaintiff failed to submit any grievances at the facility or Administrative Review Board ("ARB") level related to the claims in this case. In support of their motion, Defendants refer to three grievances submitted by Plaintiff that are in the record before the Court, arguing they do not grieve the claims in this lawsuit and fail to name Defendants. The grievances mentioned by Defendants are set forth below. In his response brief, Plaintiff addressed two of the three grievances mentioned by Defendants, and his argument concerning the same is included as follows.

1. **Grievance 445-2-19, dated February 21, 2019 (Doc. 28-7):** In this grievance, Plaintiff writes that he submitted a request to go to the law library on February 19, 2019. Plaintiff asserts this was a follow-up request as he already submitted three requests for the same in the last month. Plaintiff indicates he has not yet been called to the law library and he is in court for legal matters, but is unable to properly correspond without "proper legal knowledge." Plaintiff's counselor responded to this grievance on February 28, 2019. There is no further documentation concerning this grievance in the record. Plaintiff, however, addresses this grievance in his response to Defendants' motion. Plaintiff writes that once a prisoner places a grievance into a grievance box to be processed "he has no way of learning" what happened to it. Plaintiff also asserts that he moved to segregation about 30 days after filing this grievance and he was assigned a new counselor. He writes, "Plaintiff had no guidance as to how to check on a lost grievance especially if he was not aware it was lost."

2. **Grievance 273-3-19, dated March 13, 2019 (Doc. 2-1 at 3):** In this grievance,

Page **2** of **10**

Plaintiff writes that he had a call pass to go to the law library for March 13, 2019 at 8:00 a.m. Plaintiff explains an officer came to his cell at 7:40 a.m. and Plaintiff was not yet ready, and the officer walked away, despite Plaintiff waiting a month-and-a-half for access to the same. Plaintiff asked to be resubmitted to the law library. The counselor responded to this grievance on March 21, 2019. There is no further documentation concerning this grievance in the record. Plaintiff, however, addresses this grievance in his response to Defendants' motion. Plaintiff writes that before he could have known his "grievance did not make it to its destination he was moved to segregation with no means of knowing his grievance had been lost after resubmitting it." Plaintiff further states he did not know what further action could be pursued because there is no such guidance in the regulations.

    **3. Grievance 49-10-20, dated September 27, 2020 (Doc. 28-1 at 20-27):** In this grievance, Plaintiff complains that he gave his trial transcripts to property to be mailed out on June 26, 2020, and he received a notice on July 1, 2020 indicating the documents were sent out. Plaintiff, however, asserts the documents never made it to their destination. Plaintiff's counselor responded to the grievance on October 6, 2020, and the Grievance Officer recommended that it be denied on October 14, 2020. The CAO concurred with the Grievance Officer on October 15, 2020. The ARB received this grievance on October 22, 2020, and it was returned as untimely on April 5, 2021.

    Plaintiff does not address this grievance in his response to Defendants' motion. Because Plaintiff makes no indication that he relies on this grievance to establish exhaustion, and in light of the fact that this grievance does not address the issues in this lawsuit, the Court declines to discuss it further.

    In his response to Defendants' motion, Plaintiff does not mention any other specific

grievances. However, Plaintiff writes that from January to July 2019 approximately 50 grievances concerning inadequate law library access were filed. Plaintiff states approximately 12 of these grievances were filed from the West Housing Unit, where he resided, and only "about 3" made it to the second level of the grievance process. Plaintiff explains he placed his grievances into the grievance box for second-level review pursuant to the institutional policy, but he did not receive a response.

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on Defendants' Motion for Summary Judgment on June 2, 2022. At the hearing, Plaintiff testified he placed his February and March 2019 grievances in the black box in his housing unit. These grievances were returned to him after the "first review" (counselor's response). Within a week of receiving these grievances with the counselor's response, Plaintiff placed them back in the grievance box for "second-level", or Grievance Officer, review. Plaintiff testified he never received these grievances after placing them in the box for "second-level" review. Plaintiff indicated he did not speak with a counselor about the issues at the facility level related to grievances.

Plaintiff also testified that in addition to the grievances filed in February and March 2019 that are in the record before the Court, he filed two other grievances related to the claims in this lawsuit between April 2019 and July 2019. Plaintiff indicated he handed one of these grievances to an officer while he was walking to the shower, and he never received any response. He placed the other grievance in the bars of his cell while in segregation, and it was taken by an officer and placed in the lockbox. He never received any response to this grievance.

Plaintiff testified he never made a copy of his grievances because copies could only be made in the law library and the law library was not providing assistance to him.

Ryan Kilduff, a chairperson for the ARB, also testified at the hearing. Mr. Kilduff testified the only grievance received by the ARB referencing court issues concerned trial transcripts was grievance 49-10-20 and was returned to Plaintiff by the ARB on April 5, 2021. As previously mentioned, Plaintiff does not address this grievance and it does not address the issues in this lawsuit.

Grievance Officer Kelly Pierce testified that three grievances were received at the facility level regarding access to the law library. With regard to grievance 445-2-19 (dated February 21, 2019), facility records indicated this grievance was received for first level review February 26, 2019. This grievance was addressed by the counselor, but was not resubmitted for appeal to the Grievance Officer. Ms. Pierce testified that grievance 273-3-19 (dated March 13, 2019) was also only submitted for counselor review based on facility records. Finally, Ms. Pierce explained grievance 49-10-20 (dated September 27, 2020) was submitted for first-level review on October 5, 2020, and then resubmitted for second-level review on October 9, 2020.

## Legal Standards

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

*Exhaustion Requirements*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a

decision on the grievance.  *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision.  *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006).  The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal.  20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer.  *Id.* § 504.840.  If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender.  *Id.*  Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility.  *Id.* at § 504.870.

## Discussion

Based on the evidence in the record and arguments of the parties, the Court finds Plaintiff failed to exhaust his administrative remedies as to all Defendants prior to filing this lawsuit.

Plaintiff first contends he was thwarted in his efforts to exhaust his administrative remedies for his grievances dated February 21, 2019 and March 13, 2019 because these grievances were not returned following his submission of the same to the Grievance Officer (second-level) review. The Court finds Plaintiff's assertions regarding his attempts to submit these grievances to the Grievance Officer not credible.  Notably, Plaintiff testified he was not able to make copies of any

grievances because he lacked access to the law library. Plaintiff further testified he placed these grievances in the grievance box approximately one-week after receiving the counselor's response, and indicated he never received any response and the grievances were "lost." Plaintiff, however, attached his February and March 2019 grievances, with the counselor's response and a "Received" stamp from Clinical Services, to his complaint on October 29, 2020. Plaintiff, therefore, cannot be genuine in his assertion that he submitted these grievances for review by the Grievance Officer and never received any response, as he would not have had a copy (per his testimony) to submit to the Court.

Moreover, the Court finds that although the content of these grievances is related to the claims in this lawsuit, it fails to name, mention or describe Defendants. Pursuant to 20 ILCS § 504.810(c), grievances must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject of or who is otherwise involved in the complaint. While the Seventh Circuit has interpreted this as requiring the inmate plaintiff to identify names only to the extent practicable, *see Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010), in this instance, Plaintiff makes no mention or reference to any individual. Indeed, in his February 2019 grievance Plaintiff merely sets forth general complaints that he submitted a request to visit the law library and has not yet been called, and in his March 2019 grievance Plaintiff indicates he missed his law library call and asks to be rescheduled. Notably, in responding to the February 21, 2019 grievance, the counselor contacted and referenced the law library assistant, not Defendants Lawrence or Lashbrook. As such, the institution was clearly not on notice there was any action by Lawrence or Lashbrook of which Plaintiff was attempting to remedy. For these reasons, the Court finds the February 21, 2019 and March 13, 2019 grievances in the record do not exhaust the claims in this lawsuit against Lashbrook and Lawrence.

The Court also finds Plaintiff's hearing testimony concerning his submission of two additional grievances related to the claims in this lawsuit between April and July 2019 to be not credible. First, Plaintiff never mentioned the submission of these grievances in prior filings. Indeed, in his response brief, Plaintiff indicated that from January to July 2019 approximately 50 grievances concerning inadequate law library access were filed, of which approximately 12 were filed from the West Housing Unit, and only "about 3" made it to the second level of the grievance process. While Plaintiff clarified at the hearing that these were not all grievances he submitted, but rather, were submitted by inmates in general, the Court finds it curious Plaintiff would mention these grievances in his response brief without specifying the grievances he purportedly attempted to submit (and the Court is unaware of how Plaintiff would know 50 grievances concerning law library access were filed from January to July 2019 at Menard). Moreover, Plaintiff's testimony concerning the content of these grievances lacked detail and specificity, with Plaintiff merely parroting the general claims in this lawsuit, testifying that the grievances addressed not having access to the court and not having access to law clerks or reading materials. Plaintiff also testified to contradictory statements regarding the timing of these submissions. First, Plaintiff testified he submitted the first grievance sometime from March 30 to April 30, 2019, and the second grievance sometime from April 30 to July 26, 2019. Later, however, Plaintiff testified he submitted the second grievance between May and June 2019. For these reasons, the Court does not credit Plaintiff's testimony that he submitted two grievances concerning the claims in this lawsuit that are not in the record before the Court.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment on Exhaustion filed by Defendants Frank Lawrence and Jacqueline Lashbrook (Doc. 28) is **GRANTED**. This matter is

**DISMISSED WITHOUT PREJUDICE**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: June 8, 2022**

*s/  Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**
